IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-336-BO-BM

AMANDA MORRIS, *et al.*, )
    Plaintiffs, )
  )
v. ) ORDER
  )
CROSSCOUNTRY MORTGAGE, LLC; )
RALEIGH REALTY, INC. (f/k/a Raleigh )
Realty, LLC), )
    Defendants. )

This cause comes before the Court on motions to dismiss filed by both defendants. The appropriate responses and replies have been filed, or the time for doing so has expired, and a hearing on the motions was held before the undersigned on April 4, 2023, at Raleigh, North Carolina. In this posture, both motion are ripe for ruling. For the reasons that follow, the motions are granted but plaintiffs are permitted fourteen (14) days from the date of entry of this order to amend their complaint.

## BACKGROUND

Plaintiffs, Amanda and Joshua Morris, commenced this action on August 25, 2022. [DE 1]. Their complaint alleges that defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607, by engaging in a "kickback" or "unearned fee" scheme prohibited by RESPA. Specifically, plaintiffs allege that they were clients of Raleigh Realty in 2021 looking to buy a home. [DE 1] Compl. ¶ 12. Early in their search, plaintiffs prequalified with another lender at a 2.25% interest rate with a 100% loan to value ratio. *Id.* ¶ 15. In May 2021, plaintiffs entered into a residential purchase agreement to purchase a home. *Id.* ¶ 48. Plaintiffs allege that they were steered by the Raleigh Realty agent to obtain a loan from CrossCountry Mortgage, which offered

an interest rate of 3.625% and charged a $995.00 loan origination fee. *Id.* ¶¶ 17, 21, 50. Plaintiffs did in fact obtain a mortgage from CrossCountry Mortgage for the purchase of their primary residence in Clayton, North Carolina under the foregoing terms, and their Deed of Trust on the property was recorded on August 31, 2021. *Id.* ¶ 20.

Plaintiffs allege that the words and actions of Raleigh Realty, through its owners and/or agents, had the effect of influencing their selection of CrossCountry Mortgage as a mortgage lender. *Id.* ¶ 18. Plaintiffs further allege that one or more North Carolina branches of CrossCountry Mortgage have been paying thousands of dollars a month to Raleigh Realty and/or its owner Ryan Fitzgerald in exchange for Raleigh Realty referring, steering, and otherwise directing all of their home buyers to CrossCountry for mortgage lending services. *Id.* ¶¶ 23, 24. Plaintiffs allege that if Mr. Fitzgerald discovered that any Raleigh Realty agents were not referring home buyers to CrossCountry Mortgage he would threaten to deprive those agents of future leads. *Id.* ¶ 25.

"RESPA is a broad statute, directed against many things that increase the cost of real estate transactions[.]" *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 267 (4th Cir. 2002) (quoting *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 271 (7th Cir. 1985)). As is relevant here, RESPA prohibits kickbacks and unearned fees, providing that "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). RESPA further provides that "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Plaintiffs allege that defendants

2

Raleigh Realty and CrossCountry acted pursuant to a common scheme to violate RESPA. Plaintiffs have further filed this complaint as a putative class action.

Both defendants have moved to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. CrossCountry Mortgage[1] has also moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

---

[1] Hereinafter "CrossCountry Mortgage" or "CrossCountry."

and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Id.*

Both CrossCountry and Raleigh Realty have moved to dismiss plaintiffs' complaint under Ruel 12(b)(1) for lack of standing.

Under Article III of the U.S. Constitution, federal courts may consider only cases or controversies, and "the doctrine of standing has always been an essential component" of the case or controversy requirement. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an action to constitute a case or controversy under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, a plaintiff must "clearly allege facts demonstrating each element of [standing]." *Spokeo*, 578 U.S. at 338 (2016) (internal quotation, alteration, and citation omitted); *see also Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227 (4th Cir. 2019) (plaintiff must plausibly allege facts which, taken as true, establish standing).[2]

CrossCountry Mortgage and Raleigh Realty both contend that plaintiffs have not plausibly alleged that they suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). The provision of RESPA on which plaintiffs rely provides for a private right of action. 12 U.S.C. § 2607(d). However, an allegation of mere violation of a statute in insufficient to confer standing; rather, plaintiffs must still sufficiently show they have been "*concretely harmed* by a defendant's

---

[2] In a class action, standing is analyzed "based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

4

statutory violation". *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (noting further that "an injury in law is not an injury in fact.").

The Fourth Circuit has recently addressed the issue of injury in fact in the context of RESPA violations. In *Baehr v. Creig Northrop Team, P.C.*, the plaintiffs brought suit for violation of RESPA based on an alleged kickback scheme and identified as their injury in fact "the deprivation of impartial and fair competition between settlement providers." 953 F.3d 244, 253 (4th Cir. 2020). The court of appeals held, among other things, "that the deprivation of impartial and fair competition between settlement services providers—untethered from any evidence that the deprivation thereof increased settlement costs—is not a concrete injury under RESPA." *Id.* at 254.

Plaintiffs allegations of injury here are not much different. Plaintiffs contend they were injured when "as a result of Defendants' illegal agreement and acts to carry it out, Plaintiffs and others similarly situated were unfairly and deceptively steered toward obtaining federally related mortgage loans from CrossCountry Mortgage and have been injured by the payment of unlawful closing fees and/or the payment of origination fees or interest rates in excess of what CrossCountry's competitors in the market would have charged." Compl. ¶ 5. Plaintiffs' specific allegations identify (1) an origination fee of $995 paid to CrossCountry and (2) a mortgage with an interest rate almost 1.5 points higher than what they had prequalified for with another lender.

First, unlawful closing fees are, under *Baer*, procedural violations unless the plaintiff has alleged that they resulted in *increased* settlement costs. Plaintiffs offer a bare allegation that they were charged an origination fee by CrossCountry, but provide no allegations which would plausibly support a showing that an origination fee would not have been charged by another lender or that CrossCountry's origination fee was unreasonably higher than other lenders.

5

Second, plaintiffs have not plausibly alleged that using CrossCountry Mortgage resulted in an increased interest rate. The complaint alleges only that the plaintiffs *pre*qualified in February at an interest rate of 2.25%. Six months later, plaintiffs closed on their mortgage with CrossCountry with a 3.625% interest rate. There are no allegations which would support a showing that plaintiff's prequalification rate would have been applied in August had they proceeded with financing with the other lender or that CrossCountry's rate was higher than plaintiffs would have qualified for elsewhere during the relevant period, August 2021. *See, e.g., S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1251 (W.D. Wash. 2009) (discussing market fluctuation in mortgage interest rates and noting that a "borrower typically 'locks in' an interest rate on her home mortgage several weeks before she actually closes a mortgage deal."). In other words, the fact that plaintiffs prequalified in February at a particular interest rate has little relevance to the interest rate they closed with six months later.

Plaintiffs contend in their opposition to the motions to dismiss that they also suffered an informational injury because Raleigh Realty and CrossCountry did not disclose that they had a relationship. In their complaint, plaintiffs allege a single RESPA violation for engaging in a kickback or referral scheme in violation of § 2607, and courts have found there to be no private right of action under RESPA's disclosure requirement found in 12 U.S.C. § 2603. *See Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1074 (E.D. Cal. 2012); *see also Taylor v. Onewest Bank, FSB*, CIV. PJM 10-2247, 2011 WL 768962, at *4 (D. Md. Feb. 28, 2011) (listing cases holding same). Moreover, for an informational injury to confer Article III standing, it must nonetheless result in a "'real' harm with an adverse effect." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017). For the same reasons discussed above, plaintiffs have failed to plausibly allege that they have suffered an injury in fact, or real harm.

6

At the hearing before the undersigned, plaintiffs requested leave to amend their complaint to address the pleading deficiencies. Where a request to amend seeks to "remedy technically inadequate jurisdictional allegations" rather than "substitute new causes of action over which there would be jurisdiction" a court may grant leave to amend. *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir. 1985) (citing 28 U.S.C. § 1653). The Court, in its discretion, will permit plaintiffs leave to amend their complaint to attempt to remedy their inadequate jurisdictional allegations.[3]

Because the Court has determined that it lacks subject matter jurisdiction over the complaint as filed, it declines to consider defendant CrossCountry Mortgage's Rule 12(b)(6) argument. The motion to dismiss on this ground is therefore denied without prejudice.

## CONCLUSION

Accordingly, for the foregoing reasons, CrossCountry's motion to dismiss is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART. [DE 11]. Raleigh Realty's motion to dismiss [DE 26] is GRANTED. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1). However, plaintiffs' request for leave to amend their complaint is GRANTED. Plaintiffs shall file an amended complaint not more than fourteen (14) days from the date of entry of this order.

SO ORDERED, this 19 day of April 2023.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] Defendants remain free to re-raise their jurisdictional challenges to the allegations in plaintiffs' amended complaint. Further, should plaintiffs elect not to file an amended complaint, they must affirmatively waive their right to amend and request that this Court enter final judgment. *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022).