IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-336

AMANDA MORRIS and JOSHUA MORRIS, *individually and on behalf of themselves and all others similarly situated*,

  Plaintiffs,

v.

CROSSCOUNTRY MORTGAGE, LLC, and RALEIGH REALTY INC. (f/k/a Raleigh Realty, LLC),

  Defendants.

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(JURY TRIAL DEMANDED)**

---

Plaintiffs Amanda Morris and Joshua Morris ("Plaintiffs"), individually and on behalf of all others similarly situated, file this First Amended Class Action Complaint (the "Complaint") against Defendants CrossCountry Mortgage, LLC and Raleigh Realty, Inc. (collectively, "Defendants") alleging repeated violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 – 2617 ("RESPA"), violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1 – 75-49 ("UDTPA"), and claims for civil conspiracy.

## NATURE OF THE ACTION

1. RESPA was enacted to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2). Its purpose is to provide consumers "with greater and more timely information on the nature and costs of the settlement process" so they may be "protected from unnecessarily high settlement charges caused by certain abusive practices[.]" 12 U.S.C. § 2601(a).

2. In pertinent part, RESPA expressly disallows the acceptance of "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

3. "Settlement services" involve "any service provided in connection with a real estate settlement," including "services rendered by a real estate agent or broker, the origination of a federally related mortgage loan, [ ] and the handling of processing, and closing or settlement." 12 U.S.C. § 2602(3).

4. Settlement services also include closing costs on a home purchase, costs associated with the application, processing, underwriting, and funding involved in the origination of a mortgage, and costs of the interest paid on the mortgage by the homebuyer. *Id.*; *see also Schmitz v. Aegis Mortgage Corp.*, 48 F. Supp. 2d 877 (D. Minn. 1999) ("Total compensation to a [mortgage] broker includes direct origination and other fees paid by the borrower, indirect fees, <u>including those that are derived from the interest rate paid by the borrower</u>, or a combination of some or all." (emphasis added)).[1] These services and costs are governed by RESPA.

5. A settlement service provider "who agrees to pay a monetary referral fee that is not tied in any respect to a charge paid by a particular consumer," like "a 'retainer' agreement pursuant to which the provider pays a monthly lump sum in exchange for the recipient's agreement to refer any business that comes his way," would violate RESPA § 2607(a). *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 (2012).

6. Here, Defendants have systematically and unlawfully paid or accepted fees, kickbacks, or other valuable consideration pursuant to an explicit agreement or understanding with respect to Defendant Raleigh Realty, Inc.'s ("Raleigh Realty") referral of clients to Defendant CrossCountry Mortgage, LLC ("CrossCountry") for real estate settlement services involving federally related mortgage loans.

7. Upon information and belief, pursuant to an agreement or understanding to obtain residential mortgage and origination business, CrossCountry has paid recurring kickback or business-referral payments disguised as payments for legitimate services to one or more North Carolina realty companies, including Raleigh Realty. These kickbacks have a tendency to increase settlement costs to consumers such as Plaintiffs.

8. As a result of Defendants' unlawful agreement and their resulting actions, Plaintiffs and others similarly situated were unfairly and deceptively impelled to obtain federally related mortgage loans from CrossCountry, resulting in concrete injury by the payment of both excessive closing fees and interest rates in excess of what consumers would have been charged by CrossCountry's competitors in the market.

9. Accordingly, this action has been commenced on behalf of a class consisting of all persons who: (1) obtained a federally related mortgage from CrossCountry; and (2) utilized a buyer's agent,[2] including but not limited to Raleigh Realty, that accepted any form of "kickback" or "fee-split" for referring their client to CrossCountry in connection with a transaction involving federally related mortgage loans due to such referral.

---

[1] *See also* Plaintiffs' Response in Opposition to Defendant Raleigh Realty's Motion to Dismiss (DE 32) at p. 5 ("Mortgage origination fees and mortgage interest are two components of the total compensation paid by a borrower in a mortgage transaction and are subject to RESPA's prohibitions against unearned referral fees and kickbacks." (citing *Schmitz*)).
[2] Both within the text of RESPA and colloquially, licensed real estate professionals are interchangeably called "agents," "realtors," and "brokers." For clarity, this Complaint refers to licensed real estate professionals as "<u>agents</u>" and licensed mortgage professionals as "<u>brokers</u>."

## PARTIES

10. Plaintiffs Amanda Morris and Joshua Morris are a married couple who received residential brokerage services from Raleigh Realty and obtained a mortgage from CrossCountry for the purchase of real property located at 1520 Lynch Road, Selma, Johnston County, North Carolina 27576. The property is their current primary residence. They have been residents of Johnston County, North Carolina at all times relevant to this action.

11. Defendant CrossCountry Mortgage, LLC is a Delaware limited liability with its principal office in Brecksville, Ohio. CrossCountry provides mortgage lending and origination services to residential real estate buyers. Cross County maintains an office in Raleigh, North Carolina, led by branch manager Corey Walker ("Mr. Walker").[3]

12. Defendant Raleigh Realty Inc. (f/k/a Raleigh Realty, LLC) is a North Carolina corporation and real estate agency specializing in representing residential homebuyers and sellers. Its principal office is located at 2474 Walnut Street, Unit No. 248, Cary, Wake County, North Carolina 27518. Its owner and president is Ryan Fitzgerald ("Mr. Fitzgerald").

## JURISDICTION AND VENUE

13. The foregoing allegations are incorporated by reference and realleged herein.

14. This Court has subject matter jurisdiction to hear this Complaint and adjudicate all claims herein under 28 U.S.C. § 1331. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

15. Venue is proper in the United States District Court, Eastern District of North Carolina pursuant to 28 U.S.C. § 1391. Both Defendants conduct business in this District and a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

16. The foregoing allegations are incorporated by reference and realleged herein.

17. The purpose of RESPA is to regulate "the settlement process for residential real estate" such that "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services," like the ones exchanged between the Defendants, are eliminated. 12 U.S.C. § 2601(b).

18. Upon information and belief, Defendant Raleigh Realty employs at least fifteen (15) licensed real estate agents who represent and guide homebuyers in navigating the real estate market, evaluating their options, negotiating purchases, and facilitating the closing on the sale of a property.

19. Mr. Fitzgerald, as owner and president of Raleigh Realty, possesses and exercises significant control over Raleigh Realty agents' representation of homebuyers.

---

[3] *See* https://crosscountrymortgage.com/Raleigh-NC-3510/ (last visited May 1, 2023).

20. Upon information and belief, prior to March 2021, Raleigh Realty and CrossCountry entered into an agreement by which CrossCountry would pay Raleigh Realty to refer their homebuyer clients seeking a mortgage to CrossCountry.

21. Upon information and belief, Raleigh Realty and CrossCountry's agreement predetermined a monthly quota of referrals. When Raleigh Realty met that quota, it would receive direct compensation from CrossCountry.

22. Thereafter, Mr. Fitzgerald continuously instructed and required Raleigh Realty agents to exclusively use CrossCountry to provide the mortgage financing that their clients would inevitably need.

23. Upon information and belief, as the manager of the Raleigh, North Carolina branch of CrossCountry, Mr. Walker is an employee of CrossCountry and was acting within the course and scope of his employment by CrossCountry at all times and with respect to all actions relevant to this action.

24. Upon information and belief, as the manager of the Raleigh, North Carolina branch of CrossCountry, Mr. Walker is an agent of CrossCountry and was acting within the course and scope of his agency with CrossCountry at all times and with respect to all actions relevant to this action.

25. Upon information and belief, as branch manager, employee, and agent of CrossCountry, Mr. Walker entered into and enacted this unlawful agreement with Raleigh Realty on behalf of CrossCountry.

26. Mr. Walker had both actual and apparent authority through his status as branch manager and as the primary contact for CrossCountry's loans to act on behalf of CrossCountry.

27. Upon information and belief, this unlawful arrangement existed between Raleigh Realty, its owner Mr. Fitzgerald, and one or more mortgage brokers employed by CrossCountry, including but not necessarily limited to Mr. Walker.

28. Upon information and belief, one or more North Carolina branches of CrossCountry have been paying approximately $20,000.00 per month directly to Raleigh Realty as an unlawful kickback and referral fee.

29. The payments from CrossCountry were a financial windfall to Raleigh Realty because the standard buyers' agent commission was already paid at closing to Raleigh Realty. In other words, the payments from CrossCountry to Raleigh Realty were not for settlement services actually performed by Raleigh Realty or any of its agents.

30. In exchange for these monthly payments from CrossCountry, Raleigh Realty strictly enforced a requirement upon its agents to _exclusively_ refer, impel, and otherwise direct all buyers to CrossCountry—specifically, to Mr. Walker—for lending services.

31. Mr. Fitzgerald continually told all Raleigh Realty agents that CrossCountry's Mr. Walker "needs to be the <u>only</u> lender we [Raleigh Realty] are recommending." (*See* below (emphasis added)). Any Raleigh Realty agent that refused to unlawfully induce their clients to use CrossCountry was "taking money out of the entire company's pocket" or "<u>my</u> pockets." (*See below* (emphasis added)).



32. Mr. Fitzgerald stated that, if he were to "see" any Raleigh Realty agents not exclusively referring clients to CrossCountry by, for example, "recommending [an agent's] friend lenders instead of [Mr. Walker]" to their clients, he would threaten to retaliate by depriving those agents of future leads. Because real estate agents work exclusively on commission, Mr. Fitzgerald's repeated threats to cease providing leads were tantamount to threats to terminate the agents' livelihoods.

33. Upon information and belief, agents employed by Raleigh Realty were in fact reprimanded, suspended, or otherwise disciplined by Mr. Fitzgerald when they provided their homebuyer clients with mortgage information from other brokers.

34. Mr. Fitzgerald's words and conduct enacted a requirement upon Raleigh Realty agents to refer <u>all</u> their homebuyer clients to CrossCountry and Mr. Walker in order to maintain an exclusivity agreement with CrossCountry in return for the monthly kickback payments.

35. Upon information and belief, CrossCountry maintains similar arrangements with other realty companies throughout the state.

36. Defendants' violations of RESPA are also violations of corollary North Carolina laws and regulations for mortgage brokers and real estate agents.

37. By violating RESPA, CrossCountry, a mortgage broker engaging in the mortgage business, and its agents and associates violated the Secure and Fair Enforcement Mortgage Licensing Act, N.C.G.S. §§ 53-244.010 – 53-244.121 (the "SAFE Act").

38. The primary purpose of the SAFE Act "is to protect consumers seeking mortgage loans and to ensure that the mortgage lending industry operates without unfair, deceptive, and fraudulent practices on the part of mortgage loan originators," like CrossCountry. N.C.G.S. § 53-244.010(a).

39. In violation of the SAFE Act, CrossCountry and its brokers and associates:

    a. Failed to "comply with applicable State and federal laws and regulations related to mortgage lending or mortgage servicing," N.C.G.S. § 53-244.111(14);

    b. Failed to "make reasonable efforts to secure a loan…reasonably advantageous to [Plaintiffs] considering all the circumstances, including the rates, charges, and repayment terms of the loan," N.C.G.S. § 53-244.109(4);

    c. Failed to "timely and clearly disclose to [Plaintiffs] material information…expected to influence [their] decision" and was "reasonably accessible to [CrossCountry], including the total compensation [CrossCountry expected] to receive from any and all sources in connection with each loan option presented," N.C.G.S. § 53-244.109(5);

    d. Failed to "represent [Plaintiffs'] best interest in the course of brokering a mortgage loan," N.C.G.S. § 53-244.109(10);

    e. Willfully engaged in a "transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person in connection with the brokering or making or servicing of" a mortgage loan, N.C.G.S. § 53-244.111(8); and

    f. Breached their duty of loyalty to Plaintiffs, including the "duty not to compromise [Plaintiffs'] right or interest in favor of another's right or interest," including CrossCountry and Raleigh Realty's right or interest. N.C.G.S. § 53-244.109(11).

40. Similarly, by violating RESPA, Raleigh Realty and its agents and associates also violated the North Carolina Administrative Code for the Real Estate Commission and licensed real estate agents. *See generally* 21 NCAC 58A .0101 *et seq*.

41. Pursuant to the Code, Raleigh Realty, a real estate broker under N.C.G.S. § 93A-2(a), is prohibited from "accept[ing] any fee, kickback or other valuable consideration that is prohibited by [RESPA]." 21 NCAC 58A .0109(i).

42. Both Defendants are providers of "settlement services" as defined in RESPA and the implementing regulations. *See generally* 12 U.S.C. § 2602(3).

43. Kickback schemes, particularly those accompanying an exclusivity relationship, have the tendency to increase settlement costs, thus they are prohibited by RESPA. *See generally* 12 U.S.C. §§ 2601(b)(2); 2607.

44. The term "settlement service" encompasses "any service provided in connection with a real estate settlement," including but not limited to title searches and examinations, appraisals, inspections, insurance charges, and services rendered by real estate agents and closing attorneys. 12 U.S.C. § 2602(3).

45. Settlement services specifically provided by CrossCountry include but are not limited to "the origination of a federally related mortgage loan, [ ] and the handling of processing, and closing or settlement." *Id*.

46. Settlement services specifically provided by Raleigh Realty include but are not limited to "services rendered by a real estate agent or broker…and closing or settlement." *Id*.

47. Unlike other more straightforward settlement services like title insurance or appraisals, a mortgage is <u>not</u> a fungible commodity—every mortgage lender offers different products and services with different features, interest rates, upfront payments, insurance options, and other settlement costs. (*See, e.g.,* Ex. 2; Ex. 3 at p. 2, §§ A-D). Consequently, a consumer is unlikely to find the best mortgage loan for them without meaningfully exploring and evaluating the market.

48. Because kickbacks necessarily *decrease* competition between mortgage brokers, they necessarily tend to *increase* settlement costs for the ensnared consumer.

49. Accordingly, the unlawful kickback scheme requiring all Raleigh Realty's homebuyer clients to exclusively use CrossCountry as their mortgage provider necessarily resulted in increased settlement costs for consumers, including Plaintiffs.

50. This unlawful kickback scheme between Raleigh Realty and CrossCountry, in and of itself, materially harmed and caused a concrete injury to Plaintiffs and putative class members because it tended to unnecessarily increase the costs of settlement services.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

51. Here, Plaintiffs experienced increased costs for settlements services caused by the kickback scheme and exclusivity arrangement between Raleigh Realty and CrossCountry, including a higher interest rate, higher closing costs, and higher ongoing payments for the life of the loan.

52. Had Plaintiffs been able to fully consider their options in the mortgage market, they would have paid less in settlement services costs. Defendants deprived Plaintiffs and putative class members of impartial and fair competition which ultimately led to them paying amounts in excess of what the market would have otherwise charged. Such deprivation constitutes real harm with adverse effects that will continue for the life of the loan.

53. Plaintiffs were clients of Raleigh Realty beginning in or around March 2021. Plaintiffs were represented by Janelle Santelli ("Ms. Santelli"), a real estate agent. At the time, Ms. Santelli worked for Raleigh Realty exclusively. Plaintiffs worked with Ms. Santelli from March 2021 until their closing on August 31, 2021.

54. Generally, when a buyer decides to make an offer on a desired property, they must obtain a mortgage loan. Mortgage lending and origination services are settlement services or business incident to or part of a settlement service under RESPA, 12 U.S.C. § 2602(3).

55. Buyers are often encouraged to be "pre-qualified" or "pre-approved" for a mortgage by one or more lenders at the beginning of the homebuying and settlement process. The terms are often used interchangeably, but a pre-qualification is merely an early estimate, while a pre-approval is understood to be the more decisive phase in the homebuying process, requiring a thorough evaluation of the buyer's financial status and history.

56. CrossCountry describes "pre-qualification" as being a basic determination of a borrowers "ability to repay a loan based on information" a borrower provides. Pre-approval, on the other hand, is "a written commitment from a lender to extend a mortgage to you for a specific amount and time period." (*See below* (last accessed, May 2, 2023)).



57. In or around January 2021, Plaintiffs were pre-approved for two loans from another lender: a USDA loan at a 2.25% interest rate with a loan to value ratio of 100%; and a conventional loan at a 3.125% interest rate with a loan to value ratio of 95%. (Ex. 4; Ex. 5). Neither pre-approval included an expiration date. (*Id*.).

58. Despite these pre-approvals, immediately upon engaging Raleigh Realty in March 2021, Plaintiffs were instructed that CrossCountry was their best and only option for their mortgage

and was highly recommended by Raleigh Realty's owner, Mr. Fitzgerald. Plaintiffs complied with these instructions and sought a mortgage from CrossCountry exclusively.

59. These representations about CrossCountry being the only option for their mortgage loan were made at the explicit direction and instruction of Mr. Fitzgerald in furtherance of the kickback scheme.

60. In or around late April 2021, Plaintiffs made an offer to purchase the property located at 1520 Lynch Road, Selma, Johnston County, North Carolina 27576 (the "Property"). At that point, Plaintiffs entered into a Purchase Agreement for the Property. The sale price was $170,000.00. (Ex. 2). Upon information and belief, the closing date for the purchase was set for May 2021.

61. CrossCountry ultimately originated a 30-year, fixed-rate FHA mortgage loan for Plaintiffs' purchase. (*See generally* Ex. 2; Ex. 3). The Deed of Trust for the Property was recorded on August 31, 2021. (Ex. 1).

62. Despite their pre-approvals, the interest rate offered by CrossCountry to Plaintiffs was 3.625%—a significantly higher rate and with less favorable terms than Plaintiffs' pre-approvals. Nonetheless, Raleigh Realty, through its agents, strongly encouraged Plaintiffs to use CrossCountry for their loan origination and to forego other options.

63. Interest rates for conventional 30-year mortgage loans did not materially change between January and August 2021. Therefore, increases in Plaintiffs' interest rates were not materially impacted by changes in the overall market for residential mortgage loans.

64. Plaintiffs' mortgage totaled $166,920.00; thus, Plaintiffs will pay an estimated $107,196.00 in interest over the life of the loan. (*See generally* Ex. 1; Ex. 2; Ex. 3).

65. In comparison, at the 2.25% interest rate they were pre-approved for, Plaintiffs would pay approximately $62,783.00 in interest over the life of the loan. (Ex. 4). The difference of 1.5% alone causes a monetary injury of at least $44,413.00. At the 3.125% interest rate they were pre-approved for, Plaintiffs would pay approximately $90,506.00 in interest over the life of the loan. (Ex. 5). The difference of 0.5% alone causes a monetary injury of at least $16,690.00.

66. As demonstrated by the significant difference between Plaintiffs' pre-approved interest rates and the interest rate finalized by CrossCountry pursuant to the unlawful arrangement with Raleigh Realty, Plaintiffs have been made to suffer financial injury that will continue for the life of their loan.

67. At closing, CrossCountry charged Plaintiffs at least $3,758.87 in additional costs that they "did not shop for." (*See* Ex. 3 at p. 2, § B). By depriving Plaintiffs of the opportunity to shop around for different mortgages, Defendants gave them no choice but to pay these additional costs that they would not have paid to other lenders. Plaintiffs would not have paid these excessive amounts but for Defendants' unlawful arrangement.

68. Given the high level of trust that consumers, including Plaintiffs, place in their real estate agents when buying a home, Plaintiffs were influenced by Raleigh Realty to select CrossCountry despite the significantly higher interest rate and corresponding increased settlement costs over the life of the loan.

69. The words and actions of Raleigh Realty, its owners, and its agents were intended to have and did have the effect of affirmatively inducing Plaintiffs' and class members' selection of CrossCountry as their mortgage lender regardless of whether CrossCountry would be the most beneficial choice for the buyers.

70. But for Defendants' illegal scheme, Plaintiffs would have been able to obtain a mortgage with a lower interest rate, as demonstrated by the two other pre-approvals they received, the stability of mortgage interest rates during this time period, and no material changes in Plaintiffs' financial status during this time. (*See generally* Ex. 4; Ex. 5).

71. But for Defendants' illegal scheme, Plaintiffs would have been able to close on their home purchase with lower closing costs.

72. If there are differences between the Plaintiffs' pre-approval offers and their current mortgage loan, upon information and belief at least one loan product on the mortgage market would have decreased Plaintiff's overall settlement costs. As a result, Plaintiffs paid higher settlement costs and will continue to pay higher costs over the life of the loan after being effectively forced to only choose from CrossCountry's products and services.

73. The unlawful kickbacks and business referral fees exchanged between Defendants have the tendency to increase, and actually have increased the costs of settlement services to Plaintiffs and putative class members, causing real harm with adverse effects including higher interest rates, higher closing costs, and higher costs continuing through the life of the loan.

## CLASS ALLEGATIONS

74. The foregoing allegations are incorporated by reference and realleged herein.

75. Upon information and belief, Defendants have operated pursuant to a common scheme and standard procedures with respect to these repeated violations of RESPA such that Plaintiffs' claims are substantially identical to those of the prospective class.

76. Upon information and belief, Defendants have uniformly engaged in a pattern or practice of paying and receiving unlawful kickbacks and referral fees in connection with the origination of federally related mortgage loans during the period preceding the commencement of this action such that joinder of all class members would be impractical.

77. However, upon information and belief, CrossCountry's scheme is not necessarily limited to its agreement or understanding with Raleigh Realty. Therefore, the class claims against CrossCountry shall not be limited solely to buyers represented by Raleigh Realty.

78. Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Here, Defendants have engaged in conduct that violates RESPA on a widespread and systematic basis and a class action is appropriate and necessary.

79. Plaintiffs represent a well-defined class of victimized consumers. The classes of persons that Plaintiffs represent are:

   a. **The RESPA Class**

      i. **The CrossCountry RESPA Class:** All persons who (1) closed on a federally related mortgage loan with CrossCountry in connection with the purchase of real estate in North Carolina; (2) during the one-year period preceding the commencement of this action; (3) for which CrossCountry paid any form of kickback or business referral fee prohibited by RESPA.

      ii. **The Raleigh Realty RESPA Sub-Class:** All persons who (1) procured Raleigh Realty's brokerage services in connection with the purchase of real estate in North Carolina; and (2) obtained a federally related loan from CrossCountry within the one-year period preceding the commencement of this action; (3) for which Raleigh Realty received any form of kickback or business referral fee in violation of RESPA.

   b. **The UDTPA Class**

      i. **The CrossCountry UDTPA Class:** All persons who (1) closed on a federally related mortgage loan with CrossCountry in connection with the purchase of real estate in North Carolina; (2) during the four-year period preceding the commencement of this action; (3) for which CrossCountry paid any form of kickback or business referral fee in violation of the UDTPA.

      ii. **The Raleigh Realty UDTPA Sub-Class:** All persons who (1) procured Raleigh Realty's brokerage services in connection with the purchase of real estate in North Carolina; and (2) obtained a federally related loan from CrossCountry within the four-year period preceding the commencement of this action; (3) for which Raleigh Realty received any form of kickback or business referral fee in violation of the UDTPA.

80. Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which either Defendant has a controlling interest and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the proposed classes.

81. *Numerosity*: The members of each class are so numerous that joinder of all members is impracticable. While the exact number of members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiffs allege, upon information and belief, that hundreds, if not thousands of borrowers geographically distributed throughout North Carolina are members of the class. The precise number of class members and their addresses are unknown to Plaintiffs, but will be easily ascertainable through Defendants' business records and appropriate and reasonable discovery. Class members may be notified of the pendency of this action by published or mailed notice.

82. *Commonality*: All questions concerning Defendants' violations of RESPA are common. Defendants enacted, enforced, and employed standard business practices in connection with the provision of settlement services to the public, and through those standard business practices both Defendants repeatedly violated RESPA. The rights of each member of the classes were subject to Defendants' standard business practices and were violated in a similar fashion by Defendants' uniform and unlawful kickback scheme that tended to unnecessarily increase the costs of settlement services.

83. *Predominance*: Common questions of law and fact predominate over any individual issues that may be presented because of Defendant's unlawful patterns, policies, and practices. These questions include but are not limited to:

    a. Whether Defendants violated RESPA, 12 U.S.C. § 2607, by paying and accepting fees, kickbacks, or any other exchange of value pursuant to an agreement or understanding that business incident to or part of a real estate settlement service;

    b. Whether Defendants' unlawful kickback scheme tended to unnecessarily increase the costs of settlement services.

    c. Whether Defendants' pattern, practice, and policy of paying and accepting fees, kickbacks, or any other exchange of value constitutes an unlawful business practice;

    d. Whether Defendants violated RESPA, 12 U.S.C. § 2607, by paying and accepting any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service other than for services actually performed;

    e. Whether Defendants are jointly and severally liable to Plaintiffs and the class members in an amount equal to three times the amount of any charge for settlement services paid to CrossCountry; and

    f. Whether Defendants' pattern, practice, and policy of paying and accepting fees, kickbacks, or any other exchange of value constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

84. *Superiority*: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs anticipate no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in

which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. Moreover, despite Defendants' repeated patent violations of RESPA, the damages suffered by an individual class member may not be sufficient to justify the cost associated with prosecuting this type of litigation, nor would such an individual case be adequate to ensure that the unlawful practices cease to harm others.

85. *Typicality*: Plaintiffs' claims are typical of the claims of the classes they seek to represent. Plaintiffs and class members suffered concrete injuries due to the similarity, uniformity, and common purpose of Defendants' unlawful conduct. This unlawful kickback scheme between Raleigh Realty and CrossCountry was typical to all class members because it tended to unnecessarily increase the costs of settlement services.

86. *Adequate Representation*: Plaintiffs will fairly and adequately represent and protect the interests of the members of the classes. Plaintiffs have retained counsel competent and experienced in complex class action litigation. Plaintiffs foresee no difficulty in the management of this class action as the claims arise from Defendants' standard business practices. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

87. Plaintiffs' claims are typical of members of the class as a whole because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct.

88. Defendants enacted, enforced, and employed standard business practices in connection with the provision of settlement services to the public, and through those standard business practices both Defendants repeatedly violated RESPA and the UDTPA.

89. Defendants are jointly and severally liable to Plaintiffs and the class members in an amount equal to three times the charge for settlement services paid to CrossCountry.

## FIRST CAUSE OF ACTION
### Violation of Real Estate Settlement Procedures Act ("RESPA")
### 12 U.S.C. § 2607

90. The foregoing allegations are incorporated by reference and realleged herein.

91. Plaintiffs were represented by Raleigh Realty from March 2021 until their closing on August 31, 2021. Their agent was Ms. Santelli.

92. In or around late April 2021, Plaintiffs made an offer to purchase a home located at 1520 Lynch Road, Selma, Johnston County, North Carolina 27576. The sale price of the home was $170,000.00. Plaintiffs sought a mortgage to fulfil the Purchase Agreement.

93. By and through its agents, Raleigh Realty insisted that Plaintiffs choose CrossCountry as their mortgage lender, resulting in a higher interest rate and closing fees that Plaintiffs would not have paid but for Defendants' unlawful arrangement.

94. By and through its agents, Raleigh Realty directed, impelled, and affirmatively influenced consumers' selection of a real estate settlement service provider: Defendant CrossCountry.

95. Defendants executed and enforced an agreement and understanding that Raleigh Realty's agents would exclusively refer their clients to CrossCountry brokers for mortgage origination services in exchange for CrossCountry's payment of thousands of dollars per month.

96. From CrossCountry's perspective, the benefit of this arrangement was a stable and regular supply of persons currently in need of a residential loan to purchase a home. From Raleigh Realty's perspective, the benefit of this arrangement was a steady stream of monetary compensation. However, these "benefits" were to CrossCountry and Raleigh Realty alone.

97. By utilizing an unlawful kickback and business referral arrangement with Raleigh Realty (and any other realtors), CrossCountry unfairly competed with other mortgage companies that complied with federal laws prohibiting kickbacks.

98. Moreover, such unfair competition directly and concretely injures consumers, including Plaintiffs and putative class members, because it tends to increase settlement costs, and actually *has* increased settlement costs.

99. As a direct result of being unlawfully deprived of any meaningful choice in selecting their own mortgage lender, Plaintiffs have been injured. As a result, Plaintiffs will continuously be made to overpay thousands of dollars in interest alone over the life of their mortgage.

100. As demonstrated by the significant difference between Plaintiffs' pre-approved interest rates and the interest rate originated by CrossCountry, Plaintiffs have been unfairly and unlawfully made to suffer concrete, severe financial injury that will continue for the life of their loan.

101. The arrangement and payments were intentional, unlawful, and expressly violate RESPA.

102. Plaintiffs and all others similarly situated have standing to sue pursuant to RESPA, 12 U.S.C. § 8(d)(2), because they have been injured by Defendants' arrangement and agreement consisting of illegal referral payments and kickbacks related to real estate settlement services involving a federally related mortgage loan.

103. Defendants are jointly and severally liable to Plaintiffs and the class members in an amount equal to three times the amount of any charge for settlement services paid by them, together with the costs of this action and reasonable attorney fees.

## SECOND CAUSE OF ACTION
### Violation of the Unfair or Deceptive Trade Practices Act ("UDTPA)
### N.C.G.S. § 75-1.1 *et seq.*

104. The foregoing allegations are incorporated by reference and realleged herein.

105. The actions and conduct of Defendants CrossCountry and Raleigh Realty, delineated above, constitute unfair or deceptive acts or practices in or affecting commerce in violation of the UDTPA.

106. Defendants' actions, pattern of conduct, practices, and willful disregard of applicable North Carolina law and the well-being of consumers, including Plaintiffs, constitute unfair and/or deceptive acts or practices in violation of the UDTPA.

107. CrossCountry violated the UDTPA by utilizing unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing settlement services and mortgage loans to Raleigh Realty homebuyer clients pursuant to the unlawful agreement between Defendants.

108. Plaintiffs' claims for unfair and deceptive trade practices against CrossCountry include but are not limited to:

    a. Undertaking actions which CrossCountry knew, or should have known, offend well-established public policy, federal and state law, and federal and state banking law and were otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, including Plaintiffs;

    b. Utilizing unfair and deceptive measures to collect or attempt to collect amounts, fees, and other expenses relating to providing settlement services and mortgage loans to consumers, including Plaintiffs;

    c. Employing a system, policies, and procedures for procuring clients, providing mortgage lending services, and providing settlement services to Plaintiffs and other consumers which, under North Carolina law, are unfair, deceptive, and misleading, and not permitted by public policy;

    d. Employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods, with the explicit knowledge that such conduct was in violation of applicable North Carolina law, including the SAFE Act;

    e. Executing and implementing an unlawful agreement with Raleigh Realty to institute unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing settlement services and mortgage loans to consumers, including Plaintiffs, to their detriment;

- **f.** Remitting kickback payments to Raleigh Realty in exchange for unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services;

- **g.** Knowingly enabling Raleigh Realty's unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services Raleigh Realty's clients, including Plaintiffs;

- **h.** Knowingly enabling Raleigh Realty's violations of RESPA and corollary North Carolina laws and regulations designed to protect North Carolina consumers, including Plaintiffs; and

- **i.** Proximately causing economic injuries to Plaintiffs and all others similarly situated.

109. Upon information and belief, all CrossCountry's unfair and deceptive conduct, representations, and omissions alleged herein are pursuant to policies, practices, and procedures created, adopted, and implemented for all of its business with Raleigh Realty.

110. Raleigh Realty violated the UDTPA by utilizing unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services to its homebuyer clients pursuant to the unlawful agreement between Defendants.

111. Plaintiffs' claims for unfair and deceptive trade practices against Raleigh Realty include but are not limited to:

- **a.** Undertaking actions which Raleigh Realty knew, or should have known, offend well-established public policy, federal and state law, and federal and state banking law and were otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiffs;

- **b.** Utilizing unfair and deceptive measures to collect or attempt to collect amounts, fees, and other expenses relating to providing real estate agency and brokerage services to consumers, including Plaintiffs;

- **c.** Employing a system, policies, and procedures for assisting homebuyer clients in securing financing for purchasing a home, procuring mortgage services for clients, and providing settlement services to Plaintiffs and other consumers which, under North Carolina law, are unfair, deceptive, and misleading, and not permitted by public policy;

- **d.** Employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods, with the explicit knowledge that such conduct was in violation of applicable North Carolina law, including 21 NCAC 58A .0109(i);

- **e.** Executing and implementing an unlawful agreement with CrossCountry to institute unfair, coercive, false, deceptive, and misleading practices, actions, and representations

in connection with providing real estate agency and brokerage services to consumers, including Plaintiffs, in order to ensure they would acquire a mortgage loan from CrossCountry to their detriment;

 f. Accepting kickback payments from CrossCountry in exchange for unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing real estate agency and brokerage services;

 g. Knowingly enabling CrossCountry's unfair, coercive, false, deceptive, and misleading practices, actions, and representations in connection with providing settlement services and mortgage loans to Raleigh Realty's clients, including Plaintiffs;

 h. Knowingly enabling CrossCountry's violations of RESPA and corollary North Carolina laws and regulations designed to protect North Carolina consumers, including Plaintiffs; and

 i. Proximately causing economic injuries to Plaintiffs and all others similarly situated.

112. Upon information and belief, all Raleigh Realty's unfair and deceptive conduct, representations, and omissions alleged herein are pursuant to policies, practices, and procedures created, adopted, and implemented for all of its business with CrossCountry.

113. The forgoing allegations constitute Defendants' unfair or deceptive acts or practices in or affecting commerce in violation of N.C.G.S. § 75-1.1.

114. Defendants' unfair and deceptive acts and practices directly and proximately caused Plaintiffs and the class members injury in the form of anxiety, stress, anger, frustration, mental anguish, and other pecuniary losses, expenses, costs, and other such damages to be proven at trial.

115. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and putative class members are entitled to recover all pecuniary losses, expenses, costs, and damages, including but not limited to the attorneys' fees and expenses incurred in the prosecution of this matter, and other such damages to be proven at trial.

116. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and putative class members are entitled to recover treble damages under N.C.G.S. § 75-16, and reasonable attorneys' fees and costs as provided in N.C.G.S. § 75-16.1.

## THIRD CAUSE OF ACTION
### Civil Conspiracy

117. The foregoing allegations are incorporated by reference and realleged herein.

118. The actions and conduct of Defendants CrossCountry and Raleigh Realty, delineated above, constitute a civil conspiracy.

119. A claim for civil conspiracy merely "associate[s] the defendants together" for liability purposes. *Henry v. Deen*, 310 N.C. 75, 86-87 (1984). "The liability of the conspirators is joint and several [:]" each party who enters "into a common purpose or design is equally deemed in law a party to every act…done by any of the others in furtherance of such common design." *Muse v. Morrison*, 234 N.C. 195, 198 (1951) (internal quotation omitted).

120. To sufficiently state a claim for civil conspiracy, Plaintiffs must allege "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444 (2008) (citing *Muse* at 198).

121. Upon information and belief, Defendants intended to form and did form a conspiracy by entering into an unlawful agreement by which Raleigh Realty exclusively referred its buyer clients, including Plaintiffs, to CrossCountry in exchange for a monthly monetary payment.

122. Upon information and belief, Defendants shared an express understanding to implement this agreement by purposefully and actively depriving consumers, including Plaintiffs, of their right to receive participate in the mortgage lending process without the cost-increasing kickbacks and referral fees explicitly prohibited by RESPA.

123. Upon information and belief, Defendants shared an express understanding to implement this agreement to institute policies and practices to unfairly and deceptively induce consumers, including Plaintiffs, to select a mortgage against their best interest in violation of the UDTPA.

124. Each Defendant repeatedly violated RESPA and corollary state laws and regulations in furtherance of the conspiracy, and ss a result, Plaintiffs and putative class members suffered damages as identified herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated, pray for the following relief:

a. Certify this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives and appointing the undersigned as Class Counsel;

b. Adjudging that Defendants CrossCountry Mortgage, LLC, and Raleigh Realty, Inc. each violated RESPA, 12 U.S.C. § 2607;

c. Awarding Plaintiffs and class members all damages permitted by RESPA, including treble and statutory damages where applicable;

d. Trebling the compensatory damages of Plaintiffs and the Class pursuant to N.C.G.S. § 75-1.1, *et seq.*;

e. Adjudging that Defendants violated the UDTPA;

f.  Awarding Plaintiffs attorneys' fees;

g.  That the costs of this action be taxed to Defendants;

h.  For a trial by jury on all issues so triable;

i.  For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 3rd day of May, 2023.

*Counsel for Plaintiff*

**MAGINNIS HOWARD**

*/s/ Edward H. Maginnis*
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    (919) 526.0450
Fax:    (919) 882-8763
emaginnis@maginnishoward.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-336

| | |
|---|---|
| AMANDA MORRIS and JOSHUA MORRIS, *individually and on behalf of themselves and all others similarly situated*,<br><br>  Plaintiffs,<br><br>v.<br><br>CROSSCOUNTRY MORTGAGE, LLC, and RALEIGH REALTY INC. (f/k/a Raleigh Realty, LLC),<br><br>  Defendants. | **CERTIFICATE OF SERVICE** |

I have filed electronically the foregoing document which will be automatically served upon all attorneys of records via the Court's CM/ECF System.

This the 3rd day of May, 2023.

                MAGINNIS HOWARD
                *Counsel for Plaintiff*

                /s/ *Edward H. Maginnis*
                EDWARD H. MAGINNIS
                N.C. State Bar No. 39317
                7706 Six Forks Road, Suite 101
                Raleigh, North Carolina 27615
                Telephone: 919-526-0450
                Fax: 919-882-8763
                emaginnis@maginnishoward.com