IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-336-BO-BM

| | |
|---|---|
| AMANDA MORRIS, *et al.*, )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CROSSCOUNTRY MORTGAGE, LLC; )<br>RALEIGH REALTY, INC. (f/k/a Raleigh )<br>Realty, LLC), )<br>Defendants. ) | O R D E R |

This cause comes before the Court on motions to dismiss the amended complaint filed by both defendants. The appropriate responses and replies have been filed, or the time for doing so has expired, and in this posture both motions are ripe for ruling. For the reasons that follow, the motions to dismiss are denied.

## BACKGROUND

Plaintiffs, Amanda and Joshua Morris, commenced this action on August 25, 2022. [DE 1]. Their complaint alleged that defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607, by engaging in a "kickback" or "unearned fee" scheme prohibited by RESPA. The Court incorporates by reference as if fully set forth herein the background provided in its order granting defendants' motions to dismiss but permitting plaintiffs leave to amend their complaint. [DE 40].

The Court granted defendants' motions to dismiss for lack of subject matter jurisdiction after determining that plaintiffs had failed to allege an injury in fact sufficient to establish standing under RESPA. Now, in their amended complaint, plaintiffs have alleged the following as injuries sustained due to the alleged kickback scheme. In January 2021, plaintiffs were pre-approved for

two loans from another lender: a conventional loan at a 3.125% interest rate with a loan to value ratio of 95% and a USDA loan with a 2.25% interest rate and a loan to value ratio of 95%. [DE 41] Amd. Compl. ¶ 57. Plaintiffs allege that despite these pre-approvals, Raleigh Realty agents instructed plaintiffs that CrossCountry was their "best and only option for their mortgage and was highly recommended by Raleigh Realty's owner, Mr. Fitzgerald." *Id.* ¶ 58. Plaintiffs "complied" and ultimately obtained a mortgage from CrossCountry. *Id.* ¶ 61. Plaintiffs' mortgage for their Johnston County property is a 30-year, fixed rate FHA mortgage with a 3.625% interest rate. *Id.* ¶¶ 61-62. Plaintiffs allege that their CrossCountry mortgage is at a "significantly higher rate and with less favorable terms than their pre-approvals." *Id.* ¶ 62. Plaintiffs further allege that mortgage interest rates did not materially change between their pre-approval offers and their closing in August 2021 and that there were no other material changes to plaintiffs' finances during that period. *Id.* 64, 70. Plaintiffs allege that they will pay an estimated $107,196 in interest over the life of their loan, which is substantially higher than what they would have paid at their pre-approved interest rates. *Id.* ¶¶ 64-65. Plaintiffs further allege that CrossCountry charged them an additional $3,758.87 in costs that they "did not shop for" and would not have paid to other lenders. *Id.* ¶ 67. In sum, plaintiffs contend that due to the illegal kickback scheme between the defendants they closed on their home with higher interest rates, higher closing costs, and higher costs over the life of the loan. *Id.* ¶¶ 70- 72.

In their amended complaint, plaintiffs have also alleged claims against defendants for unfair and deceptive trade practices and civil conspiracy, both under North Carolina law. Defendants have each moved to dismiss plaintiffs' claims for lack of Article III standing. They have also each moved to dismiss plaintiffs' state law claims for failure to state a claim upon which

relief can be granted. Defendants make identical or substantially similar arguments and the Court considers their motions together.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Id.*

A. *Standing*

3

Under Article III of the U.S. Constitution, federal courts may consider only cases or controversies, and "the doctrine of standing has always been an essential component" of the case or controversy requirement. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an action to constitute a case or controversy under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, a plaintiff must "clearly allege facts demonstrating each element of [standing]." *Spokeo*, 578 U.S. at 338 (2016) (internal quotation, alteration, and citation omitted); *see also Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227 (4th Cir. 2019) (plaintiff must plausibly allege facts which, taken as true, establish standing).[1]

CrossCountry Mortgage and Raleigh Realty both contend that plaintiffs have not plausibly alleged that they suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). The provision of RESPA on which plaintiffs rely provides for a private right of action. 12 U.S.C. § 2607(d). However, an allegation of mere violation of a statute is insufficient to confer standing; rather, plaintiffs must still sufficiently show they have been "*concretely harmed* by a defendant's statutory violation". *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (noting further that "an injury in law is not an injury in fact.").

In *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020), the court of appeals held, among other things, "that the deprivation of impartial and fair competition between

---

[1] In a class action, standing is analyzed "based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

4

settlement services providers—untethered from any evidence that the deprivation thereof increased settlement costs—is not a concrete injury under RESPA." Rather, a plaintiff must allege that the statutory violation resulted in the type of harm that Congress passed the statute to prevent. *Id.* at 253. "Congress specified in RESPA that by prohibiting kickbacks, the harm it sought to prevent is the increased costs that 'tend' to result from kickbacks' interference with the market for settlement services." *Id.* at 254. Settlement services include "any service provided in connection with a real estate settlement". 12 U.S.C. § 2602(3).

Plaintiffs have alleged a concrete injury under RESPA sufficient to confer standing. Plaintiffs allege generally that a lack of competition tends to increase settlement costs related to mortgage loan products. Further, they allege specifically their own CrossCountry mortgage, in fact, resulted in increased settlement costs, including higher interest rates, closing costs, and higher ongoing payments over the life of the loan.

As to their interest rate, in their amended complaint plaintiffs now allege that there was no material change in mortgage interest rates during the period between their pre-approval and closing with CrossCountry and further that there was no material change to their financial status during that time, supporting an inference that, despite the time lapse, they would still have qualified for a lower rate with another lender. Defendants rely on the fact that only Mr. Morris was prequalified with another lender and that those prequalifications were for different types of loans than what was ultimately secured. However, absent discovery, there is no way to know whether, for example, Mrs. Morris' absence from the original prequalification or presence on the CrossCountry loan had any material impact.

Plaintiffs also newly allege an injury based on closing costs. Though defendants may ultimately be correct that these closing costs are "standard" and thus would have applied in the

5

same or similar amounts on any mortgage, the Court must take plaintiffs' allegations that they would not have paid these amounts with other lenders as true at this stage of the proceeding. *TransUnion*, 141 S. Ct. at 2208 ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'") (citation omitted).

Accordingly, the Court determines that the amended complaint alleges concrete injuries sufficient to demonstrate standing to proceed on plaintiffs' RESPA claim. Defendants' arguments that plaintiffs' unfair and deceptive trade practices claim and civil conspiracy claim should be dismissed for lack of standing based upon their purported failure to demonstrate RESPA standing thus also fails.

### B. *Failure to state a claim*

Defendants also contend that plaintiffs have failed to state an unfair and deceptive trade practices claim. To establish a violation of North Carolina's Unfair and Deceptive Trade Practices Act, a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N.C. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." *Id*. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and "a practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Marshall v. Miller*, 302 N.C. 539, 548 (1981).

Under North Carolina law, violation of a consumer protection statute may amount to a *per se* unfair and deceptive trade practice, while violation of a regulatory statute may also in certain circumstances constitute an unfair and deceptive trade practice. *In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*, 217 N.C. App. 199, 207 (2011). Plaintiffs here have alleged both that

6

defendants violated RESPA and the SAFE Act, consumer protection statutes, and that they have violated the North Carolina Administrative Code for the Real Estate Commission as well as the Secure and Fair Enforcement Mortgage Lending Act. Amd Compl. ¶¶ 36-41. This is sufficient to nudge plaintiffs' unfair and deceptive trade practices claim across the line from conceivable to plausible. The Court will not dismiss the claim at this stage.

Finally, defendants seek to dismiss plaintiffs' civil conspiracy claim. In order to prove civil conspiracy in North Carolina, the plaintiff must show that there was "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350 (2011) (quoting *Privette v. University of North Carolina*, 96 N.C.App. 124, 139 (1989)). Plaintiffs agree that this is a "dependent claim" which can be successful "[o]nly where there is an underlying claim for unlawful conduct . . .." *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 300 (2019).

Plaintiffs have sufficiently alleged underlying claims for unlawful conduct. They have further sufficiently alleged an overt act committed in furtherance of the alleged conspiracy, specifically that Raleigh Realty required its agents to exclusively recommend CrossCountry to all buyers in order to continue receiving kickback "referral fees" (which plaintiffs' allege violated RESPA and other laws) and that that conduct resulted in approximately $20,000 per month in payments from CrossCountry to Raleigh Real Estate in unlawful kickback and referral fees. Amd. Compl. ¶¶ 20-35; *see also BDM Invs.* 264 N.C. App. At 301 (noting failure to allege overt act defeats civil conspiracy claim). The Court determines that this dependent claim has been sufficiently pleaded and will permit it to go forward.

7

Case 5:22-cv-00336-BO-BM Document 53 Filed 10/24/23 Page 7 of 8

In sum, plaintiffs' amended complaint has alleged facts sufficient to confer Article III standing for their RESPA and other claims. Plaintiffs have further plausibly pleaded claims for unfair and deceptive trade practices and civil conspiracy. The motions to dismiss are therefore denied.

## CONCLUSION

Accordingly, for the foregoing reasons, the motions to dismiss plaintiffs' amended complaint [DE 43 & 45] are DENIED.

SO ORDERED, this __ day of October 2023.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE